TEXAS, S. F. & N. R. Co. *v.* ORMAN.

Filed January 12, 1886.

WRIT OF ERROR—FINAL ORDER—SUPPLEMENTAL DECREE.
  After a decree establishing a lien on railroad property, and directing a sale to satisfy it, a second decree consolidating the cause with others like it, and directing a sale as before ordered, but providing that the proceeds shall be paid into court pending an investigation into the priorities of the liens, does not affect the appealable character of the first decree as a final order.

Error to district court, Santa Fe county.

*Gildersleeve & Preston* and *Catron, Thornton & Clancy*, for plaintiff in error.

*H. L. Waldo, Wm. Breeden*, and *John H. Knaebel*, for defendant in error.

BRINKER, J. This is a motion to quash the writ of error. There are various grounds set up in the motion. In our opinion it is only necessary to consider the fifth, which is as follows: "For that the said writ of error does not bring up for review in this court a final decree or determination of the district court." If this ground is sustained, the writ must be quashed. But if it is not sustained by the record, the motion must be denied. The record discloses the following facts: On the tenth day of November, 1883, complainants filed a bill in chancery, in the district court of Santa Fe county, against the Texas, Santa Fe & Northern Railroad Company, to enforce a mechanic's lien for work and labor performed, and materials furnished the railroad company, in the construction and grading of the road-bed of the railroad company upon that part of its line know as the "San Juan Division." Such proceedings were had in the cause thereafter that on the thirteenth day of June, 1884, a decree was rendered in which the court finds that complainants performed the work and labor, and furnished the materials, for which a lien was claimed; that a notice of lien was filed in the proper office, as required by law; the amount remaining due and unpaid; declared that amount to be a lien upon the San Juan division of the road-bed, including bridges,

grading, culverts, ties, timber, and other material pertaining to said road-bed; ordered and decreed that said lien be enforced by a sale of the premises; appointed a master to make the sale; directed the advertisement, manner, and terms of sale; and ordered the master to distribute the proceeds of the sale, after paying the cost and charges of making the sale, and a master's fee of $500, as follows: To complainants' solicitors, $3,000; to the complainants, in satisfaction of their lien, $29,657.14. The residue to be paid into the registry of the court. On the fifth day of July, 1884, the master advertised that he would, on August 21, 1884, at the court-house door, in Santa Fe, sell the property covered by the lien in the manner and upon the terms directed by the decree.

The record also shows that Adam J. Hager, Lionel D. Saxton and others, and Samuel L. Bachelder, had each filed bills to enforce liens against said railroad. It further appears that on August 2, 1884, the complainants, with Hager, Saxton and others, and Bachelder, entered into, and filed in said court, a stipulation, in which they agreed that the purpose of the decrees and proceedings in said four causes should be consolidated; that a decree be entered in said causes so consolidating, modifying the decrees theretofore entered in said causes, and each of them, so that but one sale of said property should be made; that such sale be made in the *Case of Orman & Crook*, by the master appointed in that case, upon the terms in the decree rendered therein, and upon the notice and advertisement already made by said master; that the master, instead of paying out the proceeds of the sale as directed in that decree, should bring the same into court, to abide the further order of the court; that the court should, upon the bringing in of said money, determine the priority of the several liens, and distribute the funds accordingly.

On the same day the court made and entered of record an order or decree in said four causes, upon the stipulation of the several complainants, in which it recites the decrees in said causes, and orders "that, for the purposes hereinafter set forth, said four · * * * causes shall be and are   * * *   united and consolidated, and the same [shall] proceed and be heard and determined together, and the said respective decrees heretofore rendered in said causes are hereby modified and vacated *in all respects conflicting herewith.*" It then proceeds to order the property sold, for the purpose of paying the demands of the respective complainants; that the sale ordered and advertised in the *Orman & Crook Case* proceed in the manner and upon the terms so ordered by the decree in that case; that the master appointed in that case conduct the sale as therein directed, but, instead of paying out the money as ordered in the *Orman & Crook Case*, that he bring it into court; that upon the bringing in of the money the respective complainants should have permission to apply to the court for participation in the distribution of the money, and that the

court should determine the rank and priority of the respective liens as between the several complainants; that on such hearing and determination nothing in any of said decrees should prevent the investigation of any and all facts necessary to a correct finding and determination of the priority of the several liens between the respective complainants, and for that purpose further testimony might be introduced by either or all of the complainants.

The railroad company was not a party to the stipulation, and seems not to have been consulted as to the disposition of the proceeds of the sale of its property. It was, however, in court when the order or consolidated decree of August 2d was rendered.

How the stipulation and consolidated order happen to be in this record we are unable to say. They are not properly before us in this case. The writ of error was not issued to bring up the records in the consolidated causes for review, and we can only consider it in the light of a supplemental order or direction appended to the June decree, unless its effect is to vacate that decree in some essential particular. The June decree was rendered in vacation, but it was conceded on the argument that it was final in form and substance down to August 2d, when, it is claimed, it was vacated by the consolidated order of that date. That it was a final decree prior to the entering of the consolidated order we think there can be no doubt, independent of this concession. The parties to the cause in which it was rendered were Orman & Crook, complainants, and the railroad company, respondent. The finding was that complainants had performed the labor and furnished the materials for which they claimed a lien,— the amount due upon the lien; that they had complied with the law regulating the filing of notice; that they were entitled to a lien for the amount of their demand; the description of the property affected by the lien; and ordered that the lien be enforced against that specific property; that the property be sold to satisfy the lien; that a master be appointed to make the sale; directed the terms and manner of sale, the advertisement, the distribution of the money. This, then, was in all essentials a final decree. *Bostwick* v. *Brinkerhoff*, 106 U. S. 3; S. C. 1 Sup. Ct. Rep. 15; *Stovall* v. *Banks*, 10 Wall. 583.

It is insisted with much force and ability that the consolidated order of August 2d vacated the June decree, and thus destroyed its finality, so that a writ of error would not lie to bring it here for review. An examination and analysis of that part of the order of August 2d which refers to the June decree shows that this contention cannot be sustained. That order only purports to vacate so much of the June decree as "conflicts" with the order of August. The only conflict between that order and the June decree is that the June decree directs the master to advertise and sell the property in a specified manner, upon a designated notice, and distribute the proceeds; while the August order directs the same master to sell the property in the same manner under the identical advertisement begun under the June de-

cree, and not then expired, and pay the proceeds into court, when the court would determine the rank and priority of the several liens, not between the complainants and the railroad company, but between the several complainants. The rights of the railroad company had been finally adjudicated, and any further proceedings in the district court under either of the decrees would not affect it.

From the terms of this August order it seems that the liability of the railroad company had been theretofore settled, and what remained to be done was simply to divide the proceeds of sale among the complainants contending for priority, in which the railroad company could have no interest. In our opinion the August order was at most a supplemental or decretal order, requiring the proceeds arising from the sale under the June decree to be paid into court for distribution. It does not in any respect vacate the substance of the June decree, or destroy its finality. It has no greater effect either in its letter or spirit than if it had been appended to the June decree by way of directions as to the distribution of the money arising from the sale.

In *Stovall* v. *Banks, supra,* the supreme court of the United States say :

"It is not unusual in courts of equity to enter decrees determining the rights of the parties, and the extent of the liability of one party to the other, giving at the same time a right to apply to the court for modifications and directions. It has never been doubted that such decrees are final."

In *Mills* v. *Hoag,* 7 Paige, 19, the court say : "A decree is not the less final in its nature because some future orders of the court may possibly become necessary to carry such final decree into effect." This case is quoted with approval by the court in *Stovall* v. *Banks.*

The case of *Tompkins* v. *Hyatt,* 19 N. Y. 534, is not in point. In that case, after rendering a decree in favor of plaintiff for the amount of his demand, and the enforcement of his lien, a reference is made to a master to ascertain the amount of the indebtedness of plaintiff to defendant, and to deduct such indebtedness from the sum ordered to be paid plaintiff; clearly recognizing the fact that defendant had a further interest in the controversy which was still undetermined. No such fact appears in this case. The questions in which the railroad company was interested had been finally adjudged against it.

A number of authorities have been cited to show that the court had complete control over its decrees during the term, and that it could modify or vacate them at any time during the term. This principle is so well settled that we have deemed it unnecessary to review the authorities sustaining it.

We are unable to agree with counsel that the court did in fact vacate the June decree by its order of August 2, 1884. It follows, therefore, that the motion must be denied; and it is so ordered.

LONG, C. J., and HENDERSON, J., concurring.